# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3270 | **DATE** | 12/20/2002 |
| **CASE TITLE** | Jeff Hathaway vs. R.R. Donnelley Mendota, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion And Order. Defendant's motion to dismiss is granted. Plaintiff's discriminatory termination claim is untimely. His failure to rehire claim is dismissed because it is not included in his underlying EEOC charge.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | **2** | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **DEC 2 4 2002** | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | **18** |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 12/20/02 | |
| ETV | courtroom deputy's initials | 02 DEC 23 PH 5:26 | date mailed notice | |
| | | Date/time received in central Clerk's Office | ETV | |
| | | | mailing deputy initials | |

JEFF HATHAWAY,                    )
                                  )
      Plaintiff,               )
                                  )
v.                                )        No. 01 C 3270
                                  )
R.R. DONNELLEY MENDOTA, INC.      )        Judge Rebecca R. Pallmeyer
                                  )
      Defendant.               )

## MEMORANDUM OPINION AND ORDER

Plaintiff Jeff Hathaway ("Hathaway") filed his complaint in this case against his former employer R.R. Donnelley Mendota, Inc. ("Donnelley") last year. Plaintiff suffers from Retinitis Pigmentosa, a condition that affects his vision. He alleges that this condition qualifies as a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111(8), and that the Defendant's termination and failure to rehire him on the basis of his condition was a violation of section 102(A) of the ADA, 42 U.S.C. § 12112(A). Defendant Donnelley seeks dismissal, arguing that Plaintiff's claims are time-barred under the ADA, 42 U.S.C. § 12117(a). On October 17, 2001, the court granted Defendant's motion to dismiss without prejudice on grounds that Hathaway failed to file a claim with the EEOC within 300 days of the alleged violations of his rights. The court gave Hathaway the opportunity to furnish additional authority to support the argument that his failure to rehire claim is properly before the court. Having considered the additional authority and the record here with some care, the court stands by its original conclusion that Hathaway's claims are untimely. Plaintiff's motion for reconsideration is therefore denied, and this case is dismissed.

## FACTUAL BACKGROUND

For the purposes of this motion, the Plaintiff's allegations in his Complaint and supporting materials are presumed true. Jeffrey Hathaway was hired by Donnelley on November 26, 1984 as an employee at Defendant's binding plant.[1] (Hathaway Aff. ¶ 4, Ex. A to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss ("Plf's Memo.").) Plaintiff does not explain the

---

[1]    Donnelley prints books, magazines, catalogues, and telephone books. (Buck Aff ¶ 4, Ex. A to Def.'s Mot. to Dismiss.) The facility in Mendota, Illinois, where the Plaintiff was employed, prints, binds, and distributes special interest magazines for corporate publishers. (Buck Aff ¶ 4, Ex. A to Def.'s Mot. to Dismiss.)

nature of his responsibilities, but Defendant asserts that Plaintiff was a "utility" worker, required to work with and around a binding machine that contained blades, staplers, and other sharp, moving components. (Buck Aff. ¶ 5, Ex. A to Defendant's Memorandum in Support of Motion to Dismiss on Jurisdiction Grounds ("Def's Mot. to Dismiss").) During his employment with Donnelley, Plaintiff suffered from Retinitis Pigmentosa which hampered his vision.[2] (Complaint ¶ 5.) Plaintiff asserts that despite his condition, he performed all of his duties in a safe and competent manner during his fifteen-year employment with Donnelley. (Complaint ¶ 11.)

Plaintiff alleges that on July 12, 1999, Donnelley terminated his employment because of his visual disability, despite his continued ability to work in a competent and safe manner. (*Id.*) Plaintiff does not indicate how severe his condition was at the time of his termination, but he acknowledges that "he experience[d] great difficulties trying to read even with magnification, especially print with light ink." (Plf.'s Memo at 2.) Plaintiff asserts that legal documents are difficult for him to read, and claims that this difficulty was part of the reason he sought legal representation. (*Id.*)

Plaintiff alleges that on November 19, 1999, he "verbally re-applied" for a vacant position at Donnelley that he claims he was capable of performing in a safe and competent manner.[3] (Complaint ¶ 13.) On that same day, Defendant informed him that he could not work for Donnelley because he was blind. (*Id.*)

With the assistance of an attorney, Vincent Brolley, Plaintiff completed and submitted a Charge Questionnaire to the Equal Employment Opportunity Commission on August 9, 2000. (Charge Questionnaire, Ex. B to Def.'s Mot. to Dismiss.) The questionnaire alleged that Donnelley discrminated against Plaintiff on the basis of his disability when it terminated him. (Charge Questionnaire, Ex. B to Def.'s Mot. to Dismiss.) It made no mention of any efforts to reapply for

---

    [2]    Retinitis Pigmentosa is a rare, inherited disease in which the retina of the eye slowly and progressively degenerates, eventually causing blindness. *See* DORLAND'S ILLUSTRATED MED. DICTIONARY 1566 (29th ed. 2000).

    [3]    It is unclear from the record whether Hathaway reapplied for another "utility worker" position, or whether the duties of the position which Hathaway verbally requested differed at all from those he had been performing in July. In the complaint, he alleges only that Donnelley "had a vacant position which he could perform in a safe and proper manner." (Complaint ¶ 13.)

work. Shortly after he submitted the questionnaire, Plaintiff's attorney sent a letter dated August 29, 2000 to the EEOC, with a subject line reading "Supplement to charge information." In that letter, Brolley urged the EEOC to take into account Plaintiff's failed attempts to be re-hired by Donnelley, characterizing those failed attempts as continuing acts of discrimination. (Letter from Brolley to EEOC of 8/29/00, Ex. B. to Plf's Memo.) Apparently in response to this letter, on September 8, 2000, Brolley's secretary received a phone message for Brolley, from "Mr. Needas," an EEOC investigator, in which Needas allegedly advised the secretary that Plaintiff's termination claim was untimely, but that his rehire claim was timely and would be investigated.[4] (Plf.'s Memo at 3; Jasper Aff. ¶ 6, Ex. C to Plf's Memo.)

Based on Plaintiff's Charge Questionnaire, the EEOC sent a completed charge form directly to Plaintiff in late September or early October of 2000. (Hathaway Aff. ¶ 12, Ex. A to Plf's Memo.) Plaintiff reviewed the charge with his mother, and, without consulting his attorney, signed it and returned it to the EEOC on October 2, 2000. (Hathaway Aff. ¶¶ 7, 13, 14, Ex. A to Plf's Memo.) The charge alleges discriminatory termination and failure to accommodate in violation of the ADA, but makes no reference to a refusal to rehire or denial of reapplication. (EEOC Charge, Ex. D to Def.'s Mot. to Dismiss.) Nothing in the record indicates that Plaintiff attempted to amend or resubmit his charge to reflect his allegation that Donnelley discriminated against him by refusing to rehire him.

Unaware that Plaintiff had signed and returned the completed charge to the EEOC, Brolley sent a letter to Mr. Needas of the EEOC, dated November 17, 2000, which explicitly identifies the crux of Plaintiff's complaint as Donnelley's failure to rehire Hathaway. (Letter from Brolley to Needas of 11/17/00, Ex. D to Plf's Memo.) Nothing in the record indicates that any representative from the EEOC responded to this letter until Plaintiff received his Notification of Right to Sue from the EEOC on February 6, 2001. (Complaint ¶ 2(B).) The Right to Sue letter itself does not identify

---

    [4]    Defendant argues that these allegations are inadmissible hearsay and should be stricken or disregarded, because Mr. Needas' statements are offered by Brolley's secretary for the truth of the matter asserted. The court presumes that Plaintiff is not offering Mr. Needas's statement that his termination claim was untimely for the truth of that matter; but to the extent he offers it to show that the EEOC would investigate his failure to rehire claim, the court agrees with Defendant that the statement is hearsay. It is, however, admissible to establish that the EEOC received and acknowledged the August 29 letter.

the substance of Plaintiff's allegations; it merely states that Plaintiff's charge was dismissed as untimely.[5] (Dismissal and Notice of Rights, Ex. E to Def.'s Mot. to Dismiss.) On May 4, 2001, Plaintiff filed a complaint in the Northern District of Illinois, within the 90 day time limit indicated in the notice.

## DISCUSSION

In ruling on a motion to dismiss, the court assumes that the allegations of the complaint are true and draws all reasonable inferences in favor of the plaintiff. *See Pickrel v. City of Springfield*, 45 F.3d 1115, 1116 (7th Cir. 1995). If Plaintiff's allegations themselves demonstrate that his claim is barred by the statute of limitations or that he did not file a timely charge of discrimination with the EEOC, however, dismissal may be appropriate under Rule 12(b)(6). *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir.1998), citing *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred."); *Kren v. City of Springfield*, No. 97-3897, 142 F.3d 440 Table, Full Text Reported at 1998 WL 152974 (7th Cir. 1998) (affirming Rule 12(b)(6) dismissal for failure to state a claim where plaintiff filed untimely EEOC charge); *Vargas v. Yellow Freight Sys., Inc.*, No. 96-3636, 124 F.3d 206 Table, Full Text Reported at 1997 WL 413581 (7th Cir. 1997) (same); *Ratliff v. Conagra, Inc.*, No. IP 01-0129-CH/K, 2001 WL 1397298 (S.D. Ind. Oct. 31, 2001) (granting 12(b)(6) dismissal where plaintiff's underlying EEOC charge did not assert a claim against defendant).

Defendant argues that Plaintiff's complaint should be dismissed on several grounds. Specifically, Defendant contends that (1) Plaintiff's termination claim is untimely and (2) Plaintiff's failure to rehire claim is also untimely and beyond the scope of his charge.

**Hathaway's Discriminatory Termination Claim Is Untimely**

Plaintiff himself acknowledges that he filed his charge with the EEOC alleging discriminatory termination under the ADA on October 6, 2000. (Plf's Memo. at 9.) He alleges that Donnelley

---

[5]     The Right to Sue letter does not identify the substance of Plaintiff's allegations, rather, it states only that the charge was not timely filed with the EEOC. (Dismissal and Notice of Rights, Ex. E to Def.'s Mot. to Dismiss.)

terminated him because of his disability on July 12, 1999.[6] (Complaint ¶ 11.) The ADA, like Title VII, 42 U.S.C. § 2000e-5(e)(1), whose procedures and jurisdictional prerequisites it incorporates, 42 U.S.C. § 12117(a)(2), requires an individual to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. *Bullard v. Sercon Corp.*, 846 F.2d 463, 467-68 (7th Cir. 1988); *Winters v. Iowa State Univ.*, 768 F. Supp. 231, 237 (N.D. Ill 1991), *aff'd*, 962 F.2d 11 (7th Cir. 1992) (barring Title VII action where EEOC charge was filed outside 300-day period). Because memories may fail concerning the minutia of what was said and done in the workplace, the 300-day time restriction requires that claims of employment discrimination be filed without undue delay. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995). The 300-day statute of limitations began to run against the Plaintiff's termination claim on the day he was fired, July 12, 1999.[7] The October 6, 2000 charge was filed 452 days after the alleged discriminatory termination, and is accordingly, untimely. Indeed, Plaintiff's termination claim was already time-barred on August 9, 2000, when he submitted his Charge Questionnaire.

Plaintiff invokes the "continuing violation" doctrine in an attempt to preserve his termination claim. Plaintiff claims that the termination claim is timely because, along with his allegedly timely failure to rehire claim, it evidences a systematic policy of discrimination. Under the continuing violation doctrine, a failure to file a charge within the limitations period may be excused if a plaintiff links one or more time-barred acts to a discriminatory act that occurred within the limitations period. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997), *citing Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The doctrine does not afford a basis for the court to entertain Plaintiff's challenge to his termination, however, as that event constitutes a "discrete discriminatory act," not

---

[6]     It should be noted that Plaintiff's EEOC charge dated October 2, 2000 cites July 12, 2000 as the most recent day discrimination took place. In light of the Plaintiffs allegation in his complaint and EEOC Charge Questionnaire citing July 12, 1999 as his date of termination, the court presumes that the dates listed on the aforementioned charge was a clerical error intended to read July 12, 1999. The parties have not suggested otherwise.

[7]     In his EEOC Charge Questionnaire Plaintiff cites March 28, 2000, the date Plaintiff was removed from Donnelley's payroll, as the most recent date when discrimination took place. The United States Supreme Court decision in *Delaware States College v. Ricks*, 449 U.S. 250 (1980), stated that it is the date the Plaintiff knew of the alleged discriminatory act that starts the 300-day limitation running. Hence, the relevant date here is July 12, 1999, the day Plaintiff was placed on paid leave of absence until his social security benefits began, and not March 28, 2000, the day in which Plaintiff was removed from Donnelley's payroll.

terminated him because of his disability on July 12, 1999.[6] (Complaint ¶ 11.) The ADA, like Title VII, 42 U.S.C. § 2000e-5(e)(1), whose procedures and jurisdictional prerequisites it incorporates, 42 U.S.C. § 12117(a)(2), requires an individual to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. *Bullard v. Sercon Corp.*, 846 F.2d 463, 467-68 (7th Cir. 1988); *Winters v. Iowa State Univ.*, 768 F. Supp. 231, 237 (N.D. Ill 1991), *aff'd*, 962 F.2d 11 (7th Cir. 1992) (barring Title VII action where EEOC charge was filed outside 300-day period). Because memories may fail concerning the minutia of what was said and done in the workplace, the 300-day time restriction requires that claims of employment discrimination be filed without undue delay. *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995). The 300-day statute of limitations began to run against the Plaintiff's termination claim on the day he was fired, July 12, 1999.[7] The October 6, 2000 charge was filed 452 days after the alleged discriminatory termination, and is accordingly, untimely. Indeed, Plaintiff's termination claim was already time-barred on August 9, 2000, when he submitted his Charge Questionnaire.

Plaintiff invokes the "continuing violation" doctrine in an attempt to preserve his termination claim. Plaintiff claims that the termination claim is timely because, along with his allegedly timely failure to rehire claim, it evidences a systematic policy of discrimination. Under the continuing violation doctrine, a failure to file a charge within the limitations period may be excused if a plaintiff links one or more time-barred acts to a discriminatory act that occurred within the limitations period. *Speer v. Rand McNally & Co.*, 123 F.3d 658, 663 (7th Cir. 1997), *citing Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). The doctrine does not afford a basis for the court to entertain Plaintiff's challenge to his termination, however, as that event constitutes a "discrete discriminatory act," not

---

[6]      It should be noted that Plaintiff's EEOC charge dated October 2, 2000 cites July 12, 2000 as the most recent day discrimination took place. In light of the Plaintiffs allegation in his complaint and EEOC Charge Questionnaire citing July 12, 1999 as his date of termination, the court presumes that the dates listed on the aforementioned charge was a clerical error intended to read July 12, 1999. The parties have not suggested otherwise.

[7]      In his EEOC Charge Questionnaire Plaintiff cites March 28, 2000, the date Plaintiff was removed from Donnelley's payroll, as the most recent date when discrimination took place. The United States Supreme Court decision in *Delaware States College v. Ricks*, 449 U.S. 250 (1980), stated that it is the date the Plaintiff knew of the alleged discriminatory act that starts the 300-day limitation running. Hence, the relevant date here is July 12, 1999, the day Plaintiff was placed on paid leave of absence until his social security benefits began, and not March 28, 2000, the day in which Plaintiff was removed from Donnelley's payroll.

an incident that could, when linked with other conduct, constitute part of a hostile environment claim. *See National R.R. Passenger Corp. v. Morgan,* 122 S.Ct. 2061 (2002). The termination claim is untimely and was properly dismissed.

**Discriminatory Failure to Rehire Claim**

The more challenging issue here is whether the court should permit Plaintiff to pursue his claim that Donnelly violated his rights by refusing to rehire him. In his Complaint, Plaintiff alleges that on November 19, 1999, there was a vacant position available that Plaintiff could perform in a safe and proper manner as he had in his past employment with Donnelley. (Complaint ¶ 12.) He claims that he verbally reapplied for the job, but Donnelley refused to rehire him because of his impaired vision. (Complaint ¶ 13.) Plaintiff acknowledges both that he did not raise this failure to rehire claim in his August 9, 2000 EEOC Intake Questionnaire, and that he did not raise the claim in his EEOC charge filed on October 6, 2000. (Plf.'s Memo at 2.) Plaintiff argues that this claim is preserved, however, because Attorney Brolley's letter dated August 29, 2000 itself constitutes a charge on Plaintiff's behalf raising the failure to rehire claim with the EEOC. Plaintiff insists that the letter is sufficient under relevant ADA provisions and regulations, and that such a finding is consistent with the appropriate liberal interpretation of the remedial legislation. Defendant, on the other hand, counters that the rehire claim was not the subject of a timely EEOC charge, and it is outside the scope of the only EEOC charge that Plaintiff did file.

According to Plaintiff, some time after he submitted his Charge Questionnaire to the EEOC in August 2000, he advised his attorney about Donnelley's refusal to rehire him, most recently on November 19, 1999. (Plf.'s Memo at 2.) Brolley then submitted the letter dated August 29, 2000 to the EEOC with the subject line reading "Supplement to charge information." (Letter from Brolley to EEOC dated 8/29/00, Ex. B. to Plf's Memo.) In relevant portion the letter states:

> [I]n the months that followed his termination from RR Donnelley, [Hathaway] on a consistent basis, asked Donnelley's personnel manager . . . to return to work. These attempts to reapply for his former position continued all the way through mid-November of 1999.

*Id.*

Plaintiff asks the court to interpret this letter as a valid charge under the ADA. At least some regulatory language supports this interpretation. First, the relevant regulations define a

6

charge simply as "a statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the Act." 29 C.F.R. § 1626.3. Under this definition, it is clear that a statement filed by an attorney on behalf of an aggrieved client may suffice as a charge. Plaintiff also points to 29 C.F.R. § 1601.12, which provides that:

> [A] charge is sufficient when the commission receives from the person making a charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge . . .

The letter on its face plainly meets these requirements. The Supreme Court upheld that regulation earlier this year, holding that a district court erred in dismissing a complaint where the plaintiff had faxed a letter to the EEOC challenging his employer's failure to award him tenure within the 300-day window, but did not provide a sworn statement of that charge until after the time for filing had run. *Edelman v. Lynchburg College*, 122 S.Ct. 1145 (2002). *Accord, Steffen v. Meridian Life Insurance Co.*, 859 F.2d 534, 542 (7th Cir. 1988) (though plaintiff never filed a formal charge, it "would be a needless triumph of form over substance" to hold that plaintiff had not satisfied the charge-filing requirement where he went to the EEOC office specifically for that purpose, communicated his intentions, and completed an intake questionnaire at the direction of an EEOC staffer).

In several other cases, as well, courts have looked beyond the actual charge, allowing plaintiffs to proceed on claims raised in other documents. In *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994), the Seventh Circuit agreed with plaintiff that it could consider statements she made in a sworn affidavit that she filed in support of her charge. Likewise, in *Cable v. Ivy Tech State College*, 200 F.3d 467, 477-78 (7th Cir. 1999), the Seventh Circuit found that the district court was in error when it refused to consider an affidavit that the EEOC received contemporaneously with the plaintiff's charge form. Along the same lines, Judge Castillo of this court concluded that a retaliation claim raised not in the charge, but in a document filed contemporaneously with the charge, overcame the absence of any retaliation claim on the face of the charge itself. *Kastel v. Winnetka Board of Education, District 36*, 946 F. Supp. 1329, 1338 (N.D. Ill. 1996).

7

The circumstances presented here are slightly different. In this case, Plaintiff submitted a Charge Questionnaire to the EEOC on August 9, 2000 in which he raised a discriminatory termination claim that was patently untimely. He did not at that time complain about Donnelley's failure to rehire him, although that alleged wrong occurred many months before he submitted the Charge Questionnaire. Shortly thereafter, Plaintiff apparently told Brolley that he also felt he was discriminated against when Donnelley refused to rehire him as recently as November 19, 1999. Brolley then sent the EEOC a letter dated August 29, 2000 requesting that the EEOC also investigate Donnelley's failure to rehire Plaintiff. The subject of the letter was "Supplement to charge information," and in its text, Brolley indicated that the information in the letter should "supplement [Plaintiff's] charge against . . . RR Donnelley." Towards the end of the letter, Brolley stated "I would appreciate it if you could consider this evidence when assessing [Plaintiff's] charge of discrimination against RR Donnelley." The fact that the letter was explicitly intended to "supplement" the charge, and constitute evidence for the EEOC to consider, arguably militates against Plaintiff's argument that the letter was meant to stand alone as a separate charge. The letter clearly contemplates a claim or charge that the Plaintiff had already initiated. Prior to the August 29 letter, the only document that Plaintiff or Brolley had submitted to the EEOC was the Charge Questionnaire. Thus, the only document Plaintiff could have "supplemented" via Brolley's letter was the Charge Questionnaire.

Plaintiff's EEOC charge was filed on October 6, 2000, more than a month after the EEOC, received Brolley's August 29 letter. In each of the cases discussed above and cited by Plaintiff, however, each of the additional documents that the courts were willing to consider had been filed *contemporaneously with* the charge. The circumstances here suggest that Plaintiff's failure to rehire claim was an afterthought, perhaps prompted by concerns about the timeliness of his termination claim. In this court's view, the timing of the August 29 letter, preceding the charge and purporting to supplement the charge questionnaire, renders the Seventh Circuit's holding in *Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699 (7th Cir. 1999) instructive.

In *Novitsky*, plaintiff appealed from dismissal of a claim that defendant had failed to accommodate her religious beliefs by not giving her the day off on Yom Kippur. *Id.* at 700. The

district court did not allow plaintiff to proceed on that claim because it was not raised in her EEOC charge. *Id.* The charge alleged only that plaintiff was wrongfully discharged on the basis of her age and religion. *Id.* The Seventh Circuit agreed with the district court, observing that the charge did not mention Yom Kippur, nor did it even hint that plaintiff intended to pursue a theory of failure to accommodate her religious practices. *Id.* at 701. The *Novitsky* court concluded that the failure to accommodate claim was not reasonably related to the allegations of discriminatory discharge raised in the charge, and rejected plaintiff's argument that the EEOC was to blame for the absence from her charge of any mention of the Yom Kippur episode. *Id.* at 702. Notably, Plaintiff had mentioned the Yom Kippur episode in her intake questionnaire, but the charge itself, just as in the instant matter, was drafted by an EEOC staffer who reviewed the intake questionnaire, but failed to include the Yom Kippur incident in the formal charge. *Id.* Plaintiff nevertheless signed the charge in the presence of her attorney. *Id.*

In concluding that the district court properly refused to consider the failure to accommodate claim, the Seventh Circuit emphasized the significance of the contents of the charge document itself and pointed out that a charge drafted by EEOC staff is not filed unless the complainant signs it. *Id.* The court noted, further, that plaintiff was free to ask for an addition to the charge if she felt it was incomplete or was dissatisfied in any way and that the EEOC had not misled plaintiff into believing that her intake questionnaire was a charge. *Id.*, citing *Early v. Bankers Life and Casualty Co.*, 959 F.2d 75 (7th Cir. 1992) (because plaintiff alleged that an EEOC officer told him after he had filled out an intake questionnaire that he had done everything he needed to do at the administrative level and had two years to file suit, it may have been appropriate to toll statute of limitations). Ultimately, the Seventh Circuit emphasized that whether or not plaintiff consulted with counsel and whether or not plaintiff read the charge, "it was her charge, and it did not put her former employer on notice of any claim related to Yom Kippur." *Novitsky*, 196 F.3d at 702-03.

Because both the timing and the language of Brolley's August 29 letter indicate it was meant to supplement Plaintiff's charge questionnaire, the court finds *Novitsky* controlling here. Plaintiff was free to consult with his attorney prior to signing the charge; he offers no explanation for his failure to do so, nor does he explain why he signed a charge that made no mention of

9

Defendant's failure to rehire him. As the *Novitsky* court warns, complainants are bound by the charges they sign whether or not they consult legal counsel. *Id.* at 702. Furthermore, Plaintiff acknowledges that he and his mother read the charge together before he signed it. If Plaintiff had been concerned that the charge was incomplete or inaccurate, he could have refused to sign it, asked for an addition, or consulted his attorney.

The result in *Vela v. Village of Sauk Village*, 218 F.3d 661, 663 (7th Cir. 2000) supports this conclusion. In that case, plaintiff tried to pursue a sexual harassment claim that she had only raised orally to an EEOC employee who failed to include the claim in her charge. The Seventh Circuit noted two cases where it had, and one case where a district court had, considered allegations beyond those in the charge form. *Id.* at 664. In contrast to the situation in *Vela*, however, the claims considered in each of those cases were in writing and filed contemporaneously with the respective charges. *Id.*, citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-11 (7th Cir. 1992) (plaintiff's handwritten "EEOC Affidavit" submitted the same day as her EEOC charge); *Box v. A&P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir. 1985) (handwritten additions to typed charge); and *Sickinger v. Mega Systems, Inc.*, 951 F. Supp. 153, 157-58 (N.D. Ind. 1998) (charge questionnaire filled out on same day as charge filed, under particular circumstances where employer could not claim surprise at the claim stated fully in the questionnaire, but not in the charge). The Seventh Circuit concluded that the oral charge was not a sufficient predicate to her complaint in district court. *Vela*, 218 F.3d at 665. While unlike *Vela*, the August 29 letter was obviously in writing, existing Seventh Circuit precedent is clear that it is not appropriate for courts to look beyond the charge at *every written* allegation received by the EEOC. *See Steffens*, 859 F.2d at 542 (although every charge must name the respondent and generally allege discrimination, not every document containing that information is a charge). In each of the cases distinguished by the *Vela* court, the additional information was in a document contemporaneous with, as opposed to preceding, the charge. Here, the document at issue—counsel's letter to the EEOC—preceded the preparation of the charge, and the language of the document reveals that it was intended to supplement the information Plaintiff had set forth in his questionnaire. Plaintiff nevertheless signed the formal charge several days later, despite EEOC's failure to include the failure-to-rehire claim in that

document. This court is unable to distinguish the circumstances here from those presented in *Novitsky*, which is binding precedent. The court therefore adheres to its earlier determination that in the circumstances presented here, Plaintiff's failure to include a failure to rehire allegation in his subsequent charge is fatal to any such claim.

**Plaintiff's Miscellaneous Arguments**

Plaintiff raises several extenuating circumstances in an attempt to invoke a more lenient interpretation from this court, but none is persuasive. Plaintiff argues that he and his attorney relied on the September 8, 2000 phone call from the EEOC, assuming it indicated his rehire charge was preserved. Plaintiff asserts the call caused them to refrain from taking any further steps to comply with the regulations and preserve the claim. All hearsay considerations aside, this argument fails because Plaintiff did take further steps in regard to his claim against Donnelley: weeks after his attorney's secretary allegedly received the phone call, Plaintiff read, signed, and returned the charge to the EEOC without adding a failure-to-rehire claim to it.

Nor is the court persuaded by Plaintiff's objection that he ought not suffer for the inaction of the EEOC. Specifically, Plaintiff cites cases from this and other circuits where the EEOC improperly refused to allow a plaintiff to amend or verify a charge already filed. *See Albano v. Schering-Plough Corp.*, 912 F.2d 384 (9th Cir. 1990), *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960 (3rd Cir. 1978), and *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357 (7th Cir. 1968). Here, in contrast, Plaintiff had made no attempt to amend his charge.[8] Indeed, as indicated above, to the extent the EEOC should have included the information from the August 29 letter in the charge, Plaintiff's subsequent signature affirming the content of that charge overcomes any oversight by the EEOC.

Finally, Plaintiff argues that the EEOC's failure to provide notice to the employer is not, by itself, a reason for the court to refuse to entertain his failure-to-rehire claim. He cites earlier cases from other circuits including *Thornton v. E. Texas Motor Freight*, 497 F.2d 416 (6th Cir. 1974), *Dent v. St. Louis-San Francisco Ry. Co.*, 406 F.2d 399 (5th Cir. 1969), and *Miller v. Int'l Paper Co.*, 408 F.2d 283 (5th Cir. 1969), which held that conciliation efforts by the EEOC are not jurisdictional

---

[8]     To the extent Plaintiff would suggest his attorney's November 17, 2000 letter constituted such an attempt, the court notes it is beyond dispute that November 17, 2000 was well beyond the 300 days from the date of the alleged failure to rehire.

11

requirements for filing suit in district court. As an initial matter, it is important to note that Plaintiff's failure to rehire claim is not being dismissed solely because the EEOC did not notify his former employer about it. Nor is the court concerned about whether or not conciliation efforts took place in this case. More importantly, the cases Plaintiff cites do not address the fact that Plaintiff had, but did not take, the opportunity to preserve his rehire claim by amending the charge before he signed and submitted it to the EEOC. Therefore, Plaintiff's failure to rehire claim is time-barred, not by the mistake or inaction of the EEOC, but by his own failure to raise the issue on his EEOC charge.

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is granted. Plaintiff's discriminatory termination claim is untimely. His failure to rehire claim is dismissed because it is not included in his underlying EEOC charge.

ENTER:

Dated: December 20, 2002

REBECCA R. PALLMEYER
United States District Judge